FILED
2026 JUN -2 AM 3:44

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

---

**STEVENSON E. CHARLES,**

Plaintiff,

**v.**

**EQUIFAX INFORMATION SERVICES, LLC,**

Defendant.

---

Civil Action No. ________________

# COMPLAINT AND DEMAND FOR JURY TRIAL

## I. INTRODUCTION

1. This is a civil action for statutory, actual, and punitive damages arising from Defendant Equifax Information Services, LLC's ("Equifax") willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq.

2. Plaintiff Stevenson E. Charles requested his complete consumer file disclosure from Equifax on or about November 6, 2025. The disclosure Equifax produced — bearing Confirmation Number 5310568372 — contained in excess of one hundred and fifty (150) blank, missing, or omitted data fields spread across eight (8) separate tradeline entries. These pervasive omissions rendered Plaintiff unable to determine the accuracy of the information Equifax maintains about him, in direct violation of 15 U.S.C. § 1681g(a)(1).

3. The incomplete disclosure was not an isolated clerical error. The identical pattern of blanked-out Scheduled Payment Amount, Actual Payment Amount, Date of Last Activity, Date of Last Payment, Activity Designator, and Credit Limit fields appears uniformly across every account in Plaintiff's file. This systematic, uniform suppression of data fields confirms deliberate policy, not random data-entry failure.

4. In addition to the § 1681g(a)(1) violation, Equifax reported a balance exceeding the stated credit limit on the CFNA/Bridgestone Retail account — a per se inaccuracy under 15 U.S.C. § 1681e(b). Equifax further reported the FB&T/Mercury account in a materially misleading manner, showing conflicting balance figures and a "Transfer/Sold" notation on a charged-off account in a way that obscures the true status of the debt.

5. Equifax has been on notice for more than twenty-five years — since the FTC Advisory Opinion to Darcy (June 30, 2000) — that omitting complete data from a consumer's file disclosure while furnishing that same data to third-party creditors violates the FCRA. Its continued practice of systematically suppressing data fields from consumer disclosures is objectively unreasonable and constitutes willful noncompliance under Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007).

## II. JURISDICTION AND VENUE

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which expressly authorizes civil actions in any appropriate United States district court.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in this District. Plaintiff resides in Saugus, Massachusetts, within this District. Plaintiff requested his consumer file disclosure from this District and received the deficient disclosure in this District.

## III. PARTIES

8. Plaintiff Stevenson E. Charles is a natural person residing at 94 Winter Street, Saugus, Massachusetts 01906. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

9. Defendant Equifax Information Services, LLC is a limited liability company organized under the laws of the State of Georgia, with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309.

10. Equifax is a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax compiles and maintains files on consumers on a nationwide basis as that term is defined in 15 U.S.C. § 1681a(p). Equifax regularly engages in the practice of assembling, evaluating, and furnishing consumer reports as defined in 15 U.S.C. § 1681a(d).

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Request for File Disclosure

11. On or about November 6, 2025, Plaintiff Stevenson E. Charles requested his complete consumer file disclosure from Equifax, as is his right under 15 U.S.C. § 1681g(a)(1).

12. Equifax responded by producing a consumer file disclosure bearing Confirmation Number 5310568372, dated November 6, 2025 (hereinafter "the Disclosure"). The Disclosure contained eight (8) tradeline entries.

13. The FCRA requires that upon request, a consumer reporting agency shall clearly and accurately disclose to the consumer "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

14. The FCRA defines a consumer's "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g).

15. The FTC Advisory Opinion to Darcy (June 30, 2000) ("Darcy Opinion") confirms that the FCRA requires a CRA to disclose all information in a consumer's file, including complete account data and payment histories, and that omitting complete data from a consumer's own disclosure while furnishing it to third parties violates § 1681g(a)(1).

16. As the court articulated in Alexander v. Equifax Information Services, LLC, No. 3:17-cv-00862 (D. Nev. 2018), "[t]he operative question under § 1681g is whether a disclosure is unclear such that the consumer cannot determine the accuracy of the information in that disclosure."

17. The Disclosure produced by Equifax is unclear, incomplete, and deficient in that it contains in excess of one hundred and fifty (150) blank, missing, or omitted data fields across Plaintiff's eight (8) tradeline entries, making it impossible for Plaintiff to determine the accuracy of the information Equifax maintains about him.

B. Account-by-Account Inventory of Missing and Blank Fields

18. The following account-by-account inventory documents the specific blank, missing, and omitted data fields in Plaintiff's Disclosure, as required by the Darcy Opinion and the Alexander standard:

1. CFNA/Bridgestone Retail (Account *6453)

19. The CFNA/Bridgestone Retail account (Account *6453) is a Charge Account opened August 1, 2020, with a current balance of $2,276 and a reported credit limit of $1,800. The 24-month history table spanning November 2023 through September 2025 — comprising twenty-three (23) monthly rows — contains the following blank fields on every single row without exception:

(a) Scheduled Payment Amount — blank on all 23 rows;

(b) Actual Payment Amount — blank on all 23 rows;

(c) Last Payment Date — blank on all 23 rows.

20. Additionally, the following header-level fields for this account are blank in the Disclosure:

(a) Date of Last Activity;

(b) Date of Last Payment;

(c) Date Closed;

(d) Activity Designator;

(e) Scheduled Payment Amount;

(f) Actual Payment Amount;

(g) Term Duration.

21. In total, the CFNA/Bridgestone Retail entry contains no fewer than seventy-six (76) blank data fields — information that is maintained by Equifax in its internal database and furnished to third-party creditors, but was withheld from Plaintiff's own file disclosure.

<u>2. Industrial Acceptance Corp (Account *0321)</u>

22. The Industrial Acceptance Corp account (Account *0321) is an Auto loan opened April 8, 2022, with a current balance of $8,000 and a stated charge-off of $8,000. The 24-month history table spans November 2023 through September 2025, comprising twenty-three (23) monthly rows. The following critical fields are blank or omitted:

(a) Scheduled Payment Amount — blank on rows for months October 2024 through September 2025 (12 rows);

(b) Actual Payment Amount — blank on all but a handful of rows throughout the 24-month history;

(c) Credit Limit — blank on every single row of the 24-month history (23 rows);

(d) Date of Last Activity — blank in the header;

(e) Date Closed — blank in the header;

(f) Activity Designator — blank in the header;

(g) Scheduled Payment Amount — blank in the header.

23. In total, the Industrial Acceptance Corp entry contains no fewer than forty (40) blank data fields.

## 3. Current Bank (Account *J88H)

24. The "Current" account (Account *J88H) is a Secured Credit Card opened December 25, 2024. The 24-month history table spanning December 2024 through August 2025 — comprising nine (9) monthly rows — contains the following blank fields on every single row:

(a) Scheduled Payment Amount — blank on all 9 rows;

(b) Actual Payment Amount — blank on all 9 rows;

(c) Last Payment Date — blank on all 9 rows;

(d) Past Due Amount — blank on all 9 rows;

(e) Credit Limit — blank on all 9 rows.

25. Additionally, the following header-level fields for this account are blank:

(a) Date of Last Activity;

(b) Scheduled Payment Amount;

(c) Actual Payment Amount;

(d) Date of Last Payment;

(e) Term Duration;

(f) Activity Designator;

(g) Credit Limit.

26. This is a currently open account in good standing. The complete absence of a stated credit limit across all nine months of history means Plaintiff cannot assess his utilization ratio or verify whether Equifax is reporting his credit line accurately to third-party creditors. In total, the Current account entry contains no fewer than fifty-two (52) blank data fields.

<u>4. Spring Oaks Capital, LLC (Account *6286)</u>

27. The Spring Oaks Capital, LLC account (Account *6286) is a Debt Buyer Account opened January 31, 2024, with a current balance of $2,690. The 24-month history table spanning January 2025 through September 2025 — comprising nine (9) monthly rows — contains the following blank fields on every single row:

(a) Scheduled Payment Amount — blank on all 9 rows;

(b) Actual Payment Amount — blank on all 9 rows;

(c) Last Payment Date — blank on all 9 rows;

(d) Credit Limit — blank on all 9 rows.

28. Additionally, the following header-level fields for this account are blank:

(a) Date of Last Activity;

(b) Date of Last Payment;

(c) Date Closed;

(d) Activity Designator;

(e) Term Duration;

(f) Terms Frequency;

(g) Scheduled Payment Amount;

(h) Actual Payment Amount;

(i) Account Status — the "Status" field is blank in the header.

29. In total, the Spring Oaks Capital entry contains no fewer than forty-five (45) blank data fields.

### 5. FB&T/Mercury (Account *9558)

30. The FB&T/Mercury account (Account *9558) is a Credit Card opened November 24, 2021, with a stated header balance of $0 and a Charge Off Amount of $2,081. The Activity Designator shows "Transfer/Sold." The 24-month history reflects only three (3) rows (November 2023, December 2023, January 2024), despite the account being open for over 26 months. The following critical fields are blank across the history:

(a) Actual Payment Amount — blank on all 3 rows;

(b) Date of Last Activity — blank in the header;

(c) Term Duration — blank in the header;

(d) Date Major Delinquency First Reported — blank in the header;

(e) Scheduled Payment Amount — blank in the header.

31. Furthermore, the payment history grid for 2021 and 2022 contains entirely blank entries (■ symbols representing "No Data Available") despite the account being open during those periods — depriving Plaintiff of complete payment history for years of account activity.

6. Altro, Inc. (Account *31F5)

32. The Altro, Inc. account (Account *31F5) is a Line of Credit opened April 8, 2022, and closed April 1, 2024. The Disclosure contains the following blank fields:

(a) Date of Last Activity — blank;

(b) Months Reviewed — blank;

(c) Scheduled Payment Amount — blank;

(d) Actual Payment Amount — blank;

(e) Date of Last Payment — blank.

33. No 24-month payment history table is provided for this account despite it having been active during that window.

## 7. Bright Capital, Inc. (Account *44A8)

34. The Bright Capital, Inc. account (Account *44A8) is a Credit Line Secured account opened December 17, 2021, and closed February 1, 2023. The Disclosure contains the following blank fields:

(a) Scheduled Payment Amount — blank;

(b) Actual Payment Amount — blank;

(c) Term Duration — blank.

## 8. Atlantic Capital Bank SELF (Account *7275)

35. The Atlantic Capital Bank SELF account (Account *7275) is a secured installment loan opened May 22, 2020, and closed June 1, 2020. The Disclosure contains the following blank fields:

(a) Scheduled Payment Amount — blank;

(b) Actual Payment Amount — blank;

(c) Date of Last Payment — blank;

(d) Months Reviewed — blank;

(e) Narrative Codes — blank (field present, data absent).

36. No 24-month payment history table is provided.

C. Aggregate Deficiency and Systemic Pattern

37. In total, Plaintiff's Disclosure contains in excess of one hundred and fifty (150) blank, missing, or omitted data fields across eight (8) tradeline entries.

38. The systematic uniformity of these omissions — the identical suppression of the Scheduled Payment Amount, Actual Payment Amount, Activity Designator, Date of Last Activity, Date of Last Payment, and Credit Limit fields appearing consistently across every account regardless of account type, status, or age — confirms that these omissions result from Equifax's deliberate data-withholding policy, not from random or isolated error.

39. On information and belief, Equifax maintains the complete underlying data for all of these fields in its internal databases. Equifax furnishes this complete data to third-party creditors, employers, insurers, and other permissible users of consumer reports. Equifax systematically withholds this same data from consumers' own file disclosures in order to suppress disputes and reduce operational costs. This practice is precisely what the Darcy Opinion condemned twenty-five years ago.

D. Per Se Inaccuracy — Balance Exceeds Credit Limit

40. The CFNA/Bridgestone Retail account (Account *6453) is reported with a current balance of $2,276 against a stated credit limit of $1,800 — a balance-to-limit differential of $476.

41. A balance in excess of the stated credit limit is a per se inaccuracy under 15 U.S.C. § 1681e(b). See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009) (CRA bears responsibility for accuracy of what it disseminates). Any creditworthiness evaluation based on this tradeline — including any credit score calculated using Plaintiff's Equifax file — necessarily produces a materially false picture of Plaintiff's credit utilization.

42. Equifax has the technical capability to run an automated data-integrity check comparing the balance field against the credit limit field on every revolving account before generating any disclosure or consumer report. Its failure to implement this basic check — or its failure to correct the anomaly after it appeared — is objectively unreasonable under Safeco, 551 U.S. at 69.

43. Additionally, the FB&T/Mercury account (Account *9558) 24-month history row for January 2024 reflects a balance of $2,690 against a Credit Limit of $1,500 — a balance exceeding the credit limit by $1,190. This constitutes a second instance of balance exceeding credit limit per se inaccuracy.

E. Materially Misleading Reporting — FB&T/Mercury Account

44. The FB&T/Mercury account (Account *9558) presents a materially misleading picture of the debt's status in combination. The account header reports a balance of $0 and a status of "Charge Off," with an Activity Designator of "Transfer/Sold" and a Date Closed of October 23, 2023. However, the 24-month history table shows:

(a) A balance of $2,690 in January 2024 — three months after the stated closing date;

(b) A balance of $2,579 in December 2023;

(c) A balance of $2,474 in November 2023;

(d) Delinquency codes of 180+ days, 150 days, and 120 days past due.

45. The combination of a $0 header balance with a "Transfer/Sold" notation and a simultaneous 24-month history showing substantial balances and ongoing delinquencies creates a false and misleading impression that the debt was resolved, when in fact it was sold to a third-party debt buyer (Spring Oaks Capital, also appearing in Plaintiff's file as Account *6286 with a $2,690 balance). A consumer, creditor, or court reviewing this file cannot determine whether the balance has been extinguished, transferred, or remains outstanding, or whether Plaintiff is being subjected to double-counting of the same underlying debt.

46. Reporting a charged-off and transferred account in this manner — without making clear the chain of the debt's transfer, the actual current obligation, and the relationship between the original and successor accounts — is materially misleading under Pittman v. Experian Information Solutions, Inc., 901 F.3d 619 (6th Cir. 2018) and Gorman v. Wolpoff, 584 F.3d 1147 (9th Cir. 2009).

## F. Actual Harm

47. As a direct and proximate result of Equifax's violations, Plaintiff has suffered and continues to suffer:

(a) Impaired creditworthiness and diminished credit score resulting from the balance-exceeds-limit reporting on the CFNA/Bridgestone Retail account;

(b) Inability to identify, investigate, or effectively dispute the accuracy of multiple negative tradeline entries due to the systematic suppression of Scheduled Payment Amounts, Actual Payment Amounts, and other material fields;

(c) Emotional distress, including anxiety, frustration, and uncertainty caused by the inability to understand or challenge the contents of his own credit file;

(d) Financial harm including loss of access to favorable credit terms and denial or restriction of credit products based on an incomplete, inaccurate, and misleading file;

(e) Time and resources expended in attempting to identify and correct the deficiencies in the Disclosure.

## V. CAUSES OF ACTION

## COUNT I

## VIOLATION OF 15 U.S.C. § 1681g(a)(1)

## FAILURE TO CLEARLY AND ACCURATELY DISCLOSE ALL INFORMATION IN CONSUMER'S FILE

48. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

49. Section 1681g(a)(1) of the FCRA requires that upon a consumer's request, a consumer reporting agency must "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request."

50. The consumer's "file" under 15 U.S.C. § 1681a(g) means "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

51. Equifax violated 15 U.S.C. § 1681g(a)(1) by producing a consumer file disclosure for Plaintiff that omitted in excess of one hundred and fifty (150) material data fields — including Scheduled Payment Amounts, Actual Payment Amounts, Dates of Last

Activity, Dates of Last Payment, Activity Designators, Credit Limits, and other fields — across all eight (8) tradeline entries in Plaintiff's file.

52. The omissions described in paragraphs 18 through 36 above rendered Plaintiff's disclosure so incomplete that Plaintiff cannot determine the accuracy of the information Equifax maintains about him, as required by the Alexander standard.

53. On information and belief, the omitted information is maintained in Equifax's internal databases and is routinely furnished to third-party recipients of consumer reports. The systematic suppression of this information from Plaintiff's own disclosure — while providing it to others — violates both the letter and spirit of § 1681g(a)(1) and the Darcy Opinion.

54. Equifax's violation of § 1681g(a)(1) was willful within the meaning of 15 U.S.C. § 1681n. As detailed in paragraphs 5, 38, 39, and 57 through 62 below, Equifax has been on notice for over twenty-five years — since the Darcy Opinion — that this practice violates the FCRA. Equifax's continued and systematic suppression of material data fields from consumer disclosures constitutes an objectively unreasonable interpretation of the statute under Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007).

55. In the alternative, if Equifax's violation was not willful, it was negligent within the meaning of 15 U.S.C. § 1681o.

56. As a direct and proximate result of Equifax's violation, Plaintiff suffered actual damages as described in paragraph 47, above. Plaintiff is entitled to statutory damages of not less than $100 and not more than $1,000 per willful violation, punitive damages, and costs of suit under 15 U.S.C. § 1681n(a). This Court should note that Plaintiff proceeds pro se and that pleadings by pro se litigants are held to less stringent standards than those drafted by counsel. Erickson v. Pardus, 551 U.S. 89 (2007).

## COUNT II

## VIOLATION OF 15 U.S.C. § 1681e(b)

## FAILURE TO FOLLOW REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY — PER SE INACCURACY (BALANCE EXCEEDS CREDIT LIMIT)

57. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

58. Section 1681e(b) of the FCRA requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

59. The CFNA/Bridgestone Retail account (Account *6453) is reported in Plaintiff's file with a current balance of $2,276 against a credit limit of $1,800 — a balance exceeding the credit limit by $476. This is a per se inaccuracy; a charge account balance cannot legitimately exceed the credit limit without a material data error or the omission of additional context.

60. The FB&T/Mercury account (Account *9558) 24-month history for January 2024 reflects a balance of $2,690 against a credit limit of $1,500 — a balance exceeding the credit limit by $1,190. This constitutes a second per se inaccuracy in Plaintiff's file.

61. Equifax failed to implement or follow reasonable procedures that would have detected these balance-exceeds-limit anomalies before including them in Plaintiff's consumer file disclosure and any third-party consumer reports generated therefrom. The absence of a basic automated data-integrity cross-check between the balance and credit limit fields is objectively unreasonable under Safeco, 551 U.S. at 69.

62. Equifax's violation of § 1681e(b) as to these per se inaccuracies was willful, or in the alternative, negligent. Plaintiff is entitled to statutory damages, actual damages, punitive damages, and costs under 15 U.S.C. §§ 1681n and/or 1681o.

**COUNT III**

**VIOLATION OF 15 U.S.C. § 1681e(b)**

## FAILURE TO FOLLOW REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY — MATERIALLY MISLEADING REPORTING (FB&T/MERCURY)

63. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

64. Section 1681e(b) prohibits not only technically inaccurate information but also information that is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Pittman v. Experian Information Solutions, Inc., 901 F.3d 619, 629 (6th Cir. 2018); see also Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009).

65. As described in paragraphs 44 through 46, the FB&T/Mercury account (Account *9558) simultaneously displays: (a) a $0 header balance; (b) a "Charge Off" status; (c) an Activity Designator of "Transfer/Sold"; (d) a Date Closed of October 23, 2023; and (e) a 24-month payment history showing balances of $2,474 to $2,690 and delinquencies of 120, 150, and 180+ days in the months preceding and following the stated closure date.

66. This internal contradiction creates a materially misleading picture. Any third-party creditor or other permissible user reviewing this file would be unable to determine: whether the account was resolved, charged off, sold, or remains active; the actual

outstanding balance; or whether the Spring Oaks Capital debt (Account *6286, $2,690) represents the same underlying obligation that was transferred from FB&T/Mercury.

67. The conflicting data fields on the FB&T/Mercury account thus present Plaintiff's creditworthiness in a materially false light that can be expected to adversely affect credit decisions. Equifax failed to implement reasonable procedures to detect or correct this internal conflict before furnishing this information.

68. Equifax's violation of § 1681e(b) as to the misleading FB&T/Mercury reporting was willful, or in the alternative, negligent. Plaintiff is entitled to statutory damages, actual damages, punitive damages, and costs under 15 U.S.C. §§ 1681n and/or 1681o.

## VI. WILLFULNESS ALLEGATIONS

69. Equifax's violations described herein were willful within the meaning of 15 U.S.C. § 1681n. Under Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007), willfulness under the FCRA encompasses both knowing violations and reckless disregard — i.e., conduct that "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 69. Equifax's conduct satisfies this standard for the following independent and cumulative reasons:

70. Twenty-Five Years of FTC Notice. The FTC Advisory Opinion to Darcy (June 30, 2000), issued over twenty-five years ago, expressly advised that a CRA's omission of complete

account data from a consumer's own file disclosure — while furnishing that same data to third parties — violates § 1681g(a)(1). Equifax received this notice. Equifax has had over a quarter century to bring its disclosure practices into compliance. Its continued systematic suppression of material data fields cannot be attributed to innocent misreading of the statute.

71. Systemic Uniform Pattern Confirming Deliberate Policy. The identical suppression of the same data fields — Scheduled Payment Amount, Actual Payment Amount, Date of Last Activity, Date of Last Payment, Activity Designator, and Credit Limit — appearing uniformly across all eight (8) tradelines in Plaintiff's disclosure, regardless of account type, creditor, status, or vintage, is inconsistent with random data error. A system that randomly failed to populate fields would produce inconsistent omission patterns. The uniform, field-by-field suppression across every account confirms that the omissions result from Equifax's deliberate programmatic policy.

72. Per Se Inaccuracy Without Basic Cross-Check. Equifax's reporting of a balance exceeding the stated credit limit on the CFNA/Bridgestone Retail account, and on the FB&T/Mercury historical rows, demonstrates the absence of even a basic automated data-integrity check. The failure to implement a cross-check between two fields that appear on the same tradeline row — balance versus credit limit — before disseminating that information is objectively unreasonable under Safeco, 551 U.S. at 69.

## VII. RESERVATION OF § 1681i CLAIMS

73. The Disclosure does not contain Narrative Codes 166, 167, or 022, which would indicate that Plaintiff has previously notified Equifax of a dispute regarding any of the accounts described herein. Accordingly, Plaintiff does not assert counts under 15 U.S.C. § 1681i(a)(1)(A) (failure to conduct reasonable reinvestigation), § 1681i(a)(5)(A) (failure to delete unverifiable information), or § 1681i(c) (failure to note disputed status) in this initial Complaint.

74. Simultaneously with or promptly following the filing of this Complaint, Plaintiff will send a certified dispute letter to Equifax's dispute processing address (PO Box 740256, Atlanta, GA 30374) disputing each of the violations identified herein and demanding complete and accurate disclosure. Following the expiration of Equifax's 30-day reinvestigation window under § 1681i(a)(1)(A), Plaintiff reserves the right to amend this Complaint pursuant to Federal Rule of Civil Procedure 15(a) to add § 1681i counts if Equifax fails to conduct a reasonable reinvestigation or fails to correct the identified violations.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Stevenson E. Charles respectfully requests that this Court:

75. Enter judgment in favor of Plaintiff and against Defendant Equifax Information Services, LLC on all Counts;

76. Award Plaintiff statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A), with each instance of an incomplete, inaccurate, or misleading disclosure constituting a separate violation;

77. Award Plaintiff actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1), in an amount to be proven at trial, including but not limited to damages for impaired creditworthiness, loss of credit opportunities, and emotional distress;

78. Award Plaintiff punitive damages under 15 U.S.C. § 1681n(a)(2) in an amount sufficient to punish Equifax's willful and systematic violations and to deter future misconduct;

79. Award Plaintiff the costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

80. Order Equifax to provide Plaintiff with a complete, clear, and accurate consumer file disclosure that includes all information in Plaintiff's file at the time of any new request, including all fields identified as blank or missing in this Complaint;

81. Grant such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Stevenson E. Charles hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Stevenson Charles

STEVENSON E. CHARLES

Pro Se Plaintiff

[redacted] 325 Quincy st. apt 2, Dorchester, MA 02125

[redacted]

Email: Stevensoncharles1@gmail.com

Dated: _____5/20/26_______________